**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| XTREME MACHINES, LLC,<br><br>                      Plaintiff,<br><br>       v.<br><br>BRP US, INC.,<br><br>                      Defendant. | Civil Action No. 26-1395 (MAS) (JBD)<br><br>**MEMORANDUM ORDER** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Xtreme Machines, LLC's ("Plaintiff")

Motion for a Preliminary Injunction (ECF No. 7) against Defendant BRP US, Inc. ("Defendant"

or "BRP"). Defendant opposed (ECF No. 22), Plaintiff replied (ECF No. 25), and Defendant filed

a sur-reply (ECF No. 32) after seeking leave from the Court to do so (ECF Nos. 29, 31). The Court

has carefully considered the parties' submissions and reaches its decision without oral argument

under Local Civil Rule 78.1(b). For the reasons stated herein, the Court finds it appropriate to stay

this matter pending further clarification from an arbitrator regarding the arbitrability of the dispute.

Plaintiff, a "premier multi-line power sport dealership[,]" and Defendant, an entity that

"describes itself as a global leader in the world of powersports products, propulsion systems[,] and

boats[,]" began their business relationship in or around 2005. (Verified Compl. ("Compl.")

¶¶ 13-15, ECF No. 5.) Since the start of their relationship, "the parties have entered a series of

contracts . . . with the most recent [a]greement entered in December 2022"[1] so that Plaintiff could "operate as an authorized BRP dealer in New Jersey, selling and servicing Can-Am and Sea-Doo products under BRP's trademarks and pursuant to BRP's detailed operational mandates." (*Id.* ¶¶ 2, 16.) Throughout the course of dealing between the parties, Defendant has prepared the Dealer Agreements, including the General Provisions and Operation Standards, which Plaintiff alleges it was not permitted to negotiate or modify terms for. (*Id.* ¶ 18.) The General Provisions of the Dealer Agreements contain an arbitration provision (the "Arbitration Provision"), which provides in relevant part that:

> [a]ny controversy or dispute whatsoever between BRP and [Plaintiff], whether arising under contract, statutory, tort[,] or other law, including, but not limited to, any cause of action, claim, suit[,] or demand by either [p]arty, arising or allegedly arising from or relating to the terms, interpretation[,] or enforcement of this Agreement, [Plaintiff] or BRP performance hereunder, or in any way related to the relationship between the [p]arties (collectively "Dispute"), . . . shall be governed by Florida law and submitted exclusively to arbitration for resolution in Orlando, Florida before a single arbitrator mutually agreed upon by the [p]arties . . . . ***Arbitration shall be the sole and exclusive method of resolving any and all Disputes***.

(Ex. A to Compl. (General Provisions) ¶ 22, ECF No. 5 (emphasis added).)

The terms of the Dealer Agreements also include, among other things, specific operational requirements and provide for Defendant's control over sales, inventory, pricing, service, warranties, and recall obligations. (*See* Compl. ¶¶ 24-54.) Plaintiff claims that, as of 2025, its

---

[1] The agreements entered into by the parties are hereinafter referred to as the "Dealer Agreements." (Compl. ¶ 16.) In addition to the most recent Dealer Agreement itself, Plaintiff identifies two other documents that provide additional terms for the parties: (1) BRP's "Dealer Agreement General Provisions" (the "General Provisions"); and (2) BRP's "Dealer Operation Standards" (the "Operation Standards"). (*Id.* ¶ 17.)

records showed compliance with Defendant's standards across all product lines and that Defendant had not communicated any concerns of noncompliant performance. (*Id.* ¶ 57.)

On or about Sunday, February 1, 2026, however, Lisandro P. Murua ("Murua"), Defendant's Dealer Network Coordinator, sent e-mail correspondence to Michael Resciniti ("Resciniti"), one of Plaintiff's members. (*Id.* ¶¶ 8, 58.) The e-mail correspondence stated, "Attached you will find important communications from BRP regarding your Dealership" and attached three separate, yet identically-worded, letters advising of the "Expiration of the Dealer Agreement" for three product lines[2] and a fourth letter renewing the Dealer Agreement for a separate product line. (*Id.*) Resciniti did not see Murua's e-mail correspondence until 5 p.m. the next day. (*Id.* ¶ 59.) Thereafter, Resciniti sent e-mail correspondence asking "Why has BRP chose[n] not to renew our dealer agreement after 20 years of service? Can I request a meeting with the person who made this decision?" (*Id.*) Resciniti did not receive a response to that e-mail correspondence or subsequent attempts to contact Defendant. (*Id.* ¶¶ 59-64.) BRP's counsel subsequently sent e-mail correspondence to Plaintiff's counsel offering to schedule a call between the parties with counsel present.[3] (*Id.* ¶ 64.) The parties held a virtual meeting on February 5, 2026. (*Id.* ¶ 65.) BRP provided context for its decision during the virtual meeting, but has not otherwise

---

[2] The three product lines identified were the "Sea Doo Watercraft," "Can Am Side by Side Vehicle," and the "Can Am ATV" product lines. (Compl. ¶ 58.)

[3] BRP's counsel noted that "any such discussion(s) constitute confidential and inadmissible settlement communications under Federal Rule of Evidence 408, and . . . any statements made by anyone during such discussion(s) are non-discoverable and inadmissible in any hearing or legal proceeding." (Compl. ¶ 64.)

"provided any written explanation as to its reasons for nonrenewal[.]" (*Id.* ¶ 67.) As a result of this nonrenewal, Plaintiff claims it has suffered immediate harm.[4] (*See generally id.*)

After filing its Complaint, Plaintiff filed the instant motion containing a request for emergency temporary and preliminary injunctive relief and seeking an order: (1) "temporarily restraining and preliminarily enjoining Defendant . . . and all persons acting in concert with it, from terminating, cancelling, refusing to renew, or otherwise effectuating the challenged non-renewal of [Plaintiff's] dealership authorization for [Defendant's] product lines at issue"; (2) "[m]aintaining the status quo by requiring [Defendant] to continue to recognize [Plaintiff] as an authorized dealer . . . for the non-renewed product lines during the pendency of this action"; (3) "[r]estoring and maintaining [Plaintiff's] access to BRP-controlled dealer systems, portals, software platforms, warranty processing channels, parts ordering systems, technical service information, and any other tools necessary for [Plaintiff] to perform warranty, recall, safety, and other service obligations, and to fulfill existing customer orders and service commitments"; (4) "[e]njoining [Defendant] from communicating to [Plaintiff's] customers, prospective customers, or the public that [Plaintiff] is not an authorized BRP dealer or is unable to perform authorized service and warranty work for the affected product lines"; and (5) "[s]cheduling an expedited preliminary injunction hearing . . . and permitting expedited discovery narrowly tailored to the issues relevant to interim injunctive relief[.]" (Pl.'s Moving Br. 31-32, ECF No. 7.) In opposition, Defendant argues that, in addition to Plaintiff not being able to show a likelihood of

---

[4] Plaintiff asserts six counts in its Complaint: (1) declaratory judgment that "the relationship between [the parties], both in practice and as set forth in the parties' [Dealer] Agreement, constitutes a franchise pursuant to the New Jersey Franchise Practices Act [(the 'NJFPA')]"; (2) violation of the NJFPA; (3) breach of the covenant of good faith and fair dealing; (4) tortious interference with prospective economic advantage; (5) unjust enrichment; and (6) breach of contract. (Compl. ¶¶ 88-141.)

success on the merits, this dispute should be in front of an arbitrator due to the arbitration clause contained in the parties' Dealer Agreements. (Def.'s Opp'n Br. 8-20, ECF No. 22.)

The Federal Arbitration Act (the "FAA") "is a congressional declaration of a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. "Courts, therefore, cannot delve into the merits of an arbitrable dispute; their jurisdiction is limited to staying the civil action and compelling the parties to arbitrate." *Landmark Drug Corp. v. Optum Rx*, No. 24-24, 2024 WL 493274, at *3 (D.N.J. Feb. 8, 2024) (citing *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136-37 (3d Cir. 1998)). The Third Circuit, however, has "carved out a limited exception to this general principle: courts retain jurisdiction to consider the merits of a dispute solely for the purpose of determining whether temporary injunctive relief is necessary pending the arbitration of the dispute." *Id.* at *4 (citing *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811 (3d Cir. 1989)). As a result, the Court retains "the authority to grant interim relief in an arbitrable dispute, provided the [C]ourt properly exercises its discretion in issuing the relief." *Ortho Pharm.*, 882 F.2d at 811 (citations omitted).

Here, Plaintiff argues that "this Court must reject BRP's argument that the arbitration provision prevents [Plaintiff] from asking this Court to enter an order granting injunctive relief" because: (1) the Arbitration Provision violates public policy and is therefore invalid under federal and state law; and (2) "enforcement of the Arbitration Provision, which contains both a choice of law and choice of forum provision, would frustrate 'the legislative purpose, and substantially circumvent the public policy underlying the Franchise Act.'" (Pl.'s Reply Br. 2, 6-12 (quoting

*Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 680 A.2d 618, 828 (N.J. 1996)).) The Court, however, finds that this dispute is most appropriately presented to an arbitrator.

The parties in this matter clearly expressed an intent to arbitrate "any and all Disputes" that arose between them. (General Provisions ¶ 22; *see also id.* (noting Arbitration Provision applies to "***[a]ny controversy or dispute whatsoever*** between BRP and [Plaintiff], whether arising under contract, statutory, tort or other law including, but not limited to, any cause of action, claim, suit or demand by either [p]arty, arising or allegedly arising from or relating to the terms, interpretation or enforcement of this Agreement" (emphasis added))); *see also Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020) ("[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also . . . whether the parties have agreed to arbitrate, in what is called a delegation clause." (alterations in original) (quotation marks and citations omitted)).

Moreover, Plaintiff takes issue with certain provisions related to forum and choice of law, but notably does not take issue with the expansive provisions requiring arbitration for "any controversy whatsoever" or that "[a]rbitration shall be the sole and exclusive method of resolving any and all Disputes." (*See* Pl.'s Reply Br. 6-12; General Provisions ¶ 22.) As noted by the Third Circuit, "when an agreement contains a clause that delegates to an arbitrator the decision whether an arbitration agreement is enforceable, '[a] court cannot reach the question of the arbitration agreement's enforceability unless a party challenged the delegation clause and the court concludes that the delegation clause is not enforceable.'" *Williams*, 965 F.3d at 237 (quoting *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018)). Importantly, "contesting the validity of an arbitration agreement as a whole, without specifically disputing the delegation clause contained

6

therein, is not sufficient to challenge the delegation provision." *MacDonald*, 883 F.3d at 227 (citations omitted).

Because, as Defendant acknowledges (*see* Def.'s Sur-Reply Br. 1), "[Plaintiff] has not specifically challenged the Arbitration Provision's delegation clause, the arbitrator must decide its enforceability." *See also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless [respondent] challenged the delegation provision specifically, [the court] must treat [the arbitration provision] as valid . . . , and must enforce it . . . , leaving any challenge to the validity of the [a]greement as a whole for the arbitrator."). Therefore, "[b]ased on the expansive scope of the parties' agreement and bearing in mind that the decision to grant or deny a preliminary injunction is largely within the Court's discretion, the Court finds that the best approach here is to stay this case in its entirety pending clarification from the arbitrator on the arbitrability of [the dispute]."[5] *Landmark Drop Corp.*, 2024 WL 493274, at *5 (citation omitted).

Based on the foregoing,

**IT IS**, on this *11th* day of March 2026, **ORDERED** as follows:

1.     The parties are compelled to raise the present dispute with an arbitrator in accordance with the Arbitration Provision set forth in the General Provisions of the Dealer Agreement.

---

[5] Moreover, because the Court finds that it is appropriate to send this matter to arbitration at this time, it will not address the merits of the parties' dispute, including whether the NJFPA applies and the arguments that follow from that initial inquiry. (*See, e.g.*, Pl.'s Opp'n Br. 7-12.) To the extent the NJFPA applies, however, the Court notes that Plaintiff's arguments are undermined by Defendant's representation that "[its] position is not that [Plaintiff] may not attempt to assert a NJFPA claim, only that any such claim is subject to arbitration." (Def.'s Sur-Reply Br. 3.)

2. The case and all pending motions are **STAYED** pending further clarification from the arbitrator concerning the arbitrability of Plaintiff's application for preliminary injunctive relief (ECF No. 7).

3. The parties must advise the Court in the event of any decision by the arbitrator related to the parties' present dispute.

4. Should the arbitrator find that the present dispute is not arbitrable, the Court will reinstate the pending motions upon request of the parties.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

8